IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH VELAZQUEZ, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO SUPPRESS <br><br> Case No. 1:21-cr-00107-JNP <br><br> District Judge Jill N. Parrish |

Joseph Velazquez served a sentence of imprisonment and is currently on supervised release. A police officer detained Velazquez and searched his vehicle.[1] The officer discovered a pair of brass knuckles, and Velazquez admitted that they were his. The officer also learned that one of the other occupants of the vehicle was a convicted felon. Possession of the brass knuckles and association with a convicted felon violate Velazquez's supervised release conditions.

Before the court is a petition to revoke Velazquez's supervised release. His probation officer alleges that he violated the conditions of his release by failing to submit to numerous drug and alcohol tests, by testing positive for and admitting to using cocaine, by tampering with a drug test, by committing the crime of possessing a dangerous weapon (brass knuckles), and by interacting with a convicted felon without receiving prior permission. The court set an evidentiary

---

[1] The events leading up to the search have not been established through evidence. Velazquez represents in his brief that he pulled over to the side of the road because his car was overheating and that the officer pulled up behind him, detained him for failure to stop, and called for a K9 officer to assist. After a drug dog allegedly alerted to the scent of drugs, the officer searched the vehicle and discovered the brass knuckles. The officer also performed a records search for the other passengers of the vehicle and discovered that one of the passengers was a felon.

hearing for these allegations. In anticipation of the hearing, Velazquez moved to suppress all evidence related to the brass knuckles and the presence of a felon in his vehicle, arguing that this evidence was obtained through an unreasonable search and seizure in violation of his Fourth Amendment rights. ECF No. 84. The court DENIES the motion to suppress because the exclusionary rule does not apply to supervised release proceedings.

## ANALYSIS

Velazquez argues that the court should exclude from its consideration the evidence obtained during the search of his vehicle because the search violated his Fourth Amendment rights. The United Staes objects, arguing that the exclusionary rule does not apply when the court is considering a claim for revocation of supervised release. Velasquez responds that the exclusionary rule does apply to supervised release violations. Alternatively, he contends that the court should exclude the evidence under a purported harassment exception.

### I. APPLICABILITY OF THE EXCLUSIONARY RULE

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Although the Constitution contains no provision requiring the exclusion of evidence obtained in violation of the Fourth Amendment, the Supreme Court created the exclusionary rule to deter police from infringing this right. *Arizona v. Evans*, 514 U.S. 1, 10 (1995). But the exclusionary rule does not apply in all contexts. Recognizing the societal costs caused by the exclusion of otherwise competent evidence, the Court has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363 (1998). Notably, the exclusionary rule does not apply to state parole revocation proceedings. *Id.* at 369. And, most

relevant to the issue before this court, the Tenth Circuit held in *United States v. Finney*, 897 F.2d 1047, 1047 (10th Cir. 1990), that the rule is inapplicable to federal probation revocation hearings.

*Finney* controls here. Both supervised release revocation and probation revocation utilize the same procedures under Rule 32.1 of the Federal Rules of Criminal Procedure for conducting evidentiary hearings. 18 U.S.C. § 3565(a) (establishing procedures for probation revocation); 18 U.S.C. § 3583(e) (establishing procedures for supervised release revocation). Because "supervised release revocation 'is materially indistinguishable from probation revocation insofar as the deterrent effect on law enforcement officers and the societal costs from excluding reliable evidence are concerned,'" the holding in *Finney* is equally applicable to supervised release proceedings. *United States v. Martin*, 636 F. Supp. 3d 1355, 1358 (D. Utah 2022) (citation omitted); *see also* 3 WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE (CRIMINAL RULES) § 562 (5th ed. 2025) ("Probation and supervised release are generally treated the same in terms of the process of revocation under Federal Rule of Criminal Procedure 32.1(a) and (b), and cases on probation or supervised release process under Rule 32.1 can serve as authority for both types of revocation unless otherwise noted.").

Velazquez does not point to any material differences between supervised release and probation that would justify deviating from the holding of *Finney*. Instead, he argues that "[a]pplying *Finney* uncritically to evidentiary hearings under § 3583(e) is problematic because *Finney* did not consider whether the procedural requirements adopted in the Sentencing Reform Act created a trial-like procedure where the Fourth Amendment should apply." ECF No. 94 at 10. But this court may not disregard *Finney* based on Velazquez's assertions as to which arguments were or were not considered by the Tenth Circuit when it decided that case. *See United States v. Baker*, 49 F.4th 1348, 1358 (10th Cir. 2022) ("Unless and until the holding of a prior decision is

3

overruled by the Supreme Court or by the en banc court, that holding is the law of this Circuit *regardless of what might have happened had other arguments been made to the panel that decided the issue first.*" (citation modified)).

Moreover, every circuit to consider whether the exclusionary rule applies to supervised released proceedings has generally answered in the negative. *United States v. Robinson*, 63 F.4th 530, 536 (6th Cir. 2023) (collecting cases from the Second, Fourth, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits). Every district court in this circuit that has addressed this issue has also found that the exclusionary rule does not apply. *See Martin*, 636 F. Supp. 3d at 1358; *United States v. Tran*, No. 08-10002-18-JWB, 2019 WL 1002592, at *5 (D. Kan. Mar. 1, 2019); *United States v. Allison*, No. 05-20112-JWL, 2015 WL 1608652, at *2 (D. Kan. Apr. 10, 2015). The court agrees with these authorities and likewise concludes that the exclusionary rule does not apply to supervised release proceedings.[2]

## II.   HARASSMENT EXCEPTION

Velazquez also argues that the court should conduct an evidentiary hearing to determine whether the officer decided to detain Velazquez or search his vehicle because the officer knew that Velazquez was under supervised release. He contends that an unconstitutional search or seizure

---

[2] Velazquez argues that even if the exclusionary does not apply, the court should exclude the evidence as a matter of discretion. He cites *United States v. Williams*, 106 F.4th 1040 (10th Cir. 2024), which observes that "[a]t revocation hearings courts have the flexibility to 'consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.'" *Id*. at 1045 (citation omitted). But the fact that the rules of evidence do not apply to supervised release revocation hearings, FED. R. EVID. 1101(d)(3), does not support the proposition that courts are free to disregard the law regarding the applicability of the exclusionary rule. At any rate, the court declines to exclude the challenged evidence as a matter of discretion in this case.

motivated by such knowledge would fall under a harassment exception and justify exclusion, even if the exclusionary rule would otherwise be inapt in a supervised release proceeding.

Velazquez cites a series of cases in which courts have addressed in passing the argument that evidence should be excluded based on allegations of harassment against an individual on supervised release or probation. In each case, however, the court declined to apply a harassment exception because there was no evidence of harassment. *United States v. Alexander*, 124 F.3d 200 (6th Cir. 1997) (unpublished table decision) ("While the exclusionary rule may apply if officers were harassing the defendant because of his supervised release status, *Montez,* 952 F.2d at 858; *Finney,* 897 F.2d at 1048, no evidence of harassment exists in this case."); *United States v. Montez*, 952 F.2d 854, 859 (5th Cir. 1992) ("While in a situation such as this, where the agents knew that the one to be searched was on supervised release, the court must carefully review the agents' conduct to determine if harassment was involved, there was clearly none in this case."); *United States v. Finney*, 897 F.2d 1047, 1048 (10th Cir. 1990) (declining to decide whether a harassment exception should be created because there was no evidence that the officers knew that the individual searched was on probation); *United States v. Bazzano*, 712 F.2d 826, 833 n.1 (3d Cir. 1983) (same). Absent a single federal case in which a court has applied a harassment exception, this court declines to adopt such an exception here.

After these circuit court cases were decided, moreover, the Supreme Court declined to recognize a harassment exception for state parolees. The Court held that even if the officer performing the search knew that the suspect was on parole, the fruits of an unconstitutional search would not be excluded in a parole revocation hearing. *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 367–68 (1998). Admittedly, parole revocation proceedings are not identical to supervised release revocation hearings, and some of the Court's concerns regarding the

"particularly high [costs of exclusion] in the context of parole revocation proceedings" do not translate to supervised release. *See id.* at 365–66 (emphasizing a state's unique interest in compliance with parole requirements and the extent to which state parole proceedings are frequently informal and non-adversarial). But otherwise, the reasons that *Scott* gives for rejecting a harassment exception in the context of parole apply equally to supervised release. The Court found that the deterrent effect of adopting such a rule would be minimal because a police officer's "focus is not upon ensuring compliance with parole conditions or obtaining evidence for introduction at administrative proceedings, but upon obtaining convictions of those who commit crimes. The non-criminal parole proceeding 'falls outside the offending officer's zone of primary interest.'" *Id*. at 368 (citation omitted). This same logic applies to supervised release proceedings because they are not criminal prosecutions and similarly lie outside of a police officer's zone of primary interest. *See Esteras v. United States*, 606 U.S. 185, 192 (2025) ("'Supervised release is "a form of postconfinement monitoring" that permits a defendant a kind of conditional liberty by allowing him to serve part of his sentence outside of prison,' subject to conditions on his behavior." (citation omitted)); *see also id*. at 203 (holding that courts may not consider retribution when revoking supervised release). The *Scott* Court also rejected the harassment exception because it "would add an additional layer of collateral litigation regarding the officer's knowledge of the parolee's status." *Scott*, 524 U.S. at 368. Because the revocation of supervised release, like the revocation of parole, is not part of a criminal prosecution, individuals under supervision are not entitled to the same panoply of rights available in a criminal proceeding, nor do the rules of evidence apply to revocation hearings. *United States v. Williams*, 106 F.4th 1040, 1045 (10th Cir. 2024). Thus, the Supreme Court's concern about accreting additional layers of litigation to inherently flexible and informal proceedings is also relevant to supervised release hearings.

In sum, because the reasons for rejecting the harassment exception articulated in *Scott* also apply to supervised release proceedings, this authority precludes the adoption of a harassment exception in this context. *See United States v. Martin*, 636 F. Supp. 3d 1355, 1358 n.1 (D. Utah 2022) (observing that *Scott* likely closed the door on the hypothetical harassment exception for supervised release proceedings); *United States v. Tran*, No. 08-10002-18-JWB, 2019 WL 1002592, at *3 (D. Kan. Mar. 1, 2019) (same).

## CONCLUSION

The court denies Velazquez's motion to suppress because the exclusionary rule does not apply to supervised release proceedings.

DATED February 2, 2026.

        BY THE COURT

        _____
        Jill N. Parrish
        United States District Court Judge